```
           IN THE UNITED STATES DISTRICT COURT
         FOR THE NORTHERN DISTRICT OF ILLINOIS
                      EASTERN DIVISION
```

LOREINA BROWN,                    )
                                  )
            Plaintiff,            )
                                  )
    v.                            )     No. 09 C 6506
                                  )
CITY OF CHICAGO, et al.,          )
                                  )
            Defendants.           )

MEMORANDUM ORDER

This case, like so many others among the distressingly large volume of lawsuits charging members of the Chicago Police Department ("Department") with violations of plaintiffs' constitutional rights,[1] poses the recurring question of the public disclosure of Complaint Register files ("CRs") and other police disciplinary items, especially those that did not result in findings adverse to the officers.[2] What are currently pending

---

[1] When a federal judge receives such an unending stream of complaints, the picture that they seem to portray is that of a law enforcement group infected with lawlessness--a perception terribly unfair to the hundreds of conscientious public servants who hold those positions. And regrettably, such instances as the high profile case of the just-sentenced rogue Police Commander Jon Burge reinforce that perception of widespread lawlessness. All the more important, then, that federal courts act to safeguard the individual rights of defendant police officers as well as the individual rights of plaintiffs.

[2] Again regrettably, the appropriate treatment of such matters is made more complicated by the distressing history of the Department's internal investigatory procedures, which have consistently generated results that experience has shown to be unduly favorable to those charged, with an unreasonably miniscule number of adverse findings that defy common sense and later-revealed facts. Once more the Burge case serves as a poster child that demonstrates that phenomenon.

here are competing proposals for protective orders--one by plaintiff Loreina Brown ("Brown")(Dkt. 45) and the other by counsel for defendants City of Chicago and some of its police officers (Dkt. 50).

For a time that dispute was readily resolvable in terms favorable to Brown's position.  In Gekas v. Williamson, 393 Ill.App.3d 573, 912 N.E.2d 347 (4th Dist. 2009) the Illinois Appellate Court held that law enforcement personnel have no privacy interest in such disciplinary proceedings, no matter what result may have come out of the internal investigatory procedures.  Here in part is what Gekas, id. at 585-86, 912 N.E.2d at 357-58 said on the subject discussed here in n. 2:

> Whether information "bears on" (or is relevant to, relates to, or has reference to) the public duties of public employees depends on the subject matter of the information, not its ultimate accuracy.  That a complaint against a deputy sheriff is "unfounded" is nothing more than a conclusion of the sheriff's office: in response to the complaint, the public body investigated itself, or "self-monitored."  We should interpret the Act in such a way as to avoid absurd results.  See Burger v. Lutheran General Hospital, 198 Ill.2d 21, 59, 259 Ill.Dec. 753, 759 N.E.2d 533, 555 (2001).  If the Act allowed a public body to deny access to complaints that it deemed to be unfounded, defeating the Act would be as easy as declaring a complaint to be unfounded.
>
> \*        \*        \*
>
> To monitor the Sangamon County sheriff's office to ensure it is being conducted in the public interest, citizens might want to see whether the Division is performing a fair and objective investigation of complaints.  They might want to see whether complaints that the Division determined to be unfounded are really

> unfounded. Obviously, citizens cannot perform this critique (which section 1 calls nothing less than the people's "duty") if so-called "unfounded" complaints are exempt from disclosure for the tautological reason that the public body decided they were unfounded. Such an exemption would throw a cloak over potential wrongdoing and insulate officials from political accountability.
>
> The circuit court erred in allowing defendant to withhold "unfounded" complaints of wrongdoing by Gillette in the performance of his duties. Complaints, founded or unfounded, that he committed misconduct in his capacity as a deputy sheriff are "information that bears on [his] public duties," and the disclosure of such information "shall not be considered an invasion of personal privacy." 5 ILCS 140/7(1)(b)(West 2006). Insomuch as these materials, true or false, founded or unfounded, bear on his duties as a police officer, the disclosure of these materials would not invade his personal privacy, and, thus, we do not reach the question of whether their disclosure would be a "clearly unwarranted invasion of [his] personal privacy." 5 ILCS 140/7(1)(b)(West 2006).

Accordingly both this Court and a number of its colleagues issued rulings conforming to that statement of Illinois law (see, e.g., Padilla v. City of Chicago, No. 06 C 5462, 2009 WL 2501393 (N.D. Ill. Aug. 14). And as this Court's November 16, 2009 memorandum in Padilla, 669 F.Supp.2d 911, 912 (N.D. Ill. 2009) held, a plaintiff's counsel might then make that material publicly available--a constitutionally protected right (see, e.g., Jepson, Inc. v. Makita Elec. Works, Ltd., 30 F.3d 854, 858 (7th Cir. 1994) and cases cited there).

Then, however, the Illinois General Assembly intervened by amending the Illinois Freedom of Information Act ("FOIA") by changing one of the exemptions from public inspection and copying

3

(5 ILCS 140/7(n)) to read:

> Records relating to a public body's adjudication of employee grievances or disciplinary cases; however, this exemption shall not extend to the final outcome of cases in which discipline is imposed.

Even though Gekas had equated the earlier use of the term "bears on"[3] in the nonexempt context as having the same meaning as "relate to," that legislative amendment led a number of this Court's colleagues to reverse their fields. This Court similarly views the legislative change as recognizing a right of protection from disclosure to merely curious members of the public who are entitled to disclosure under the general thrust of Illinois FOIA, 5 ILCS 140/1.

But care must be taken not to conflate the general rule in that respect--a rule that now negates a universal "public right to know" as to CRs and the like--with the amenability to disclosure in the context of a lawsuit such as this one. Such conflation, like any other Pavlovian-type generalization, is likely to generate an overly simplistic answer to the more precise question posed in a particular case.

For the present, then, a protective order of the type proffered by counsel for defendants, and not that tendered by

---

[3] 5 ILCS 140/7(1)(b) had read:

> The disclosure of information that bears on the public duties of public employees and officials shall not be considered an invasion of personal privacy.

Brown's counsel, will be entered.  Defense counsel's proposed order must, however, be modified to make clear that the order is an interim ruling, that it is subject to possible further revision in the event of future developments in the law in this area and that it is not intended to control what may ultimately be the operative rule as to the public disclosure of CRs based on further developments in this action.

Accordingly Brown's motion (Dkt. 45) is denied, while defendants' motion (Dkt. 50) is granted.  In that last respect, defense counsel are ordered promptly to draft a modification of their proposal to conform to the preceding paragraph of the text and to submit it to Brown's counsel and this Court for equally prompt action.

_____
Milton I. Shadur
Senior United States District Judge

Date:  January 24, 2011